Stewart, J.
Three questions are presented to us in considering whether the demurrers of respondents to relator’s petition should be sustained or overruled. They are:
1. Has relator the capacity or qualification which entitles him to maintain this action?
2. Is an action in prohibition a proper remedy for the relief which relator seeks?
3. Is the statute, under and in compliance with which Goldman, Sweeney and Chamberlin admittedly filed their petitions, valid and operative or is it invalid and inoperative as being in conflict with a provision of the Constitution of Ohio?
As to question number one, respondents argue that relator has no authority to maintain this action for the reason that it is axiomatic that to establish a cause of action the plaintiff must allege some right or status of the plaintiff and some action by the defendant which injured or interfered with plaintiff’s right; and that relator will not be injured by being presented with a ballot on which a number of names have been placed, pursuant to the statute.
We are in agreement that ordinarily a person is not authorized to attack the constitutionality of a statute, where his private rights have suffered no interference or impairment, but in our opinion, as a matter of public policy, a citizen of a community does hqve such an interest in his government as to give him capacity to maintain a proper action to enforce the performance of a public duty affecting himself as a citizen and citizens generally.
Where a public right, as distinguished from a purely private right, is involved, a citizen need not,show any special interest therein, but he may maintain a proper *151 action predicated on his citizenship relation to snch public right. This doctrine has been steadily adhered to by this court over the years. State v. Brown, 38 Ohio St., 344; State, ex rel., v. Henderson, 38 Ohio St., 644, 649; State, ex rel., v. Tanzey, 49 Ohio St., 656, 32 N. E., 750; State, ex rel. Trauger, v. Nash, Governor, 66 Ohio St., 612, 64 N. E., 558; and Brissel et al., Commrs., v. State, ex rel. McCammon, 87 Ohio St., 154, 100 N. E., 348.
The third paragraph of the syllabus in the last-cited case reads:
“In a proceeding in mandamus where the relief sought is the enforcement of a public duty by a public officer or board, it is sufficient to sustain the right of the relator to maintain the suit, that he show that he is a citizen and as such interested in the execution of the laws.”
In our opinion it is clear that relator is qualified to maintain the present action.
As to the second question, respondents argue that prohibition is not a proper remedy to obtain the relief which relator seeks; and that, since respondents are not judicial officers but simply administrative officials, they should not be subject to a writ of prohibition. However, it is relator’s claim that respondents are attempting to place upon the ballot the names of men as candidates for judicial office, who are not entitled to have their names on such ballot, and are thus attempting to give life to what is claimed to be an invalid and unconstitutional statute.
In such a situation this court has decided that prohibition is the proper remedy to prevent the Secretary of State or a board of elections from taking any steps to place names of candidates on a ballot, where under the law the names may not properly be placed there. State, ex rel. Stanley, v. Vernon et al., Board of Elections, 127 Ohio St., 204, 187 N. E., 733, and State, ex *152 rel. Smith, v. Hummel, Secy. of State, 146 Ohio St., 341, 66 N. E. (2d), 111. In the latter case it is stated in the syllabus:
“A writ of prohibition will issue to prevent placing on the primary ballots candidates’ names which may not lawfully be placed there.”
Respondents’ objection to prohibition as the remedy in the present situation is not well taken.
We now come to question number three which is the all-important question in the present action.
Section 3513.256, Revised Code, reads:
“The nominating petition of independent candidates for the office of Representative to the General Assembly, County Commissioner, County Auditor, Prosecuting Attorney, Clerk of the Court of Common Pleas, Sheriff, County Recorder, County Treasurer, County' Engineer, Coroner, Judge of Probate Court, and Judge of the Court of Common Pleas, shall be signed by not less than twenty-five qualified electors of the county, or not less than seven per cent of the number of electors who voted for Governor at the next preceding regular state election in the county, whichever is the greater. In counties having a population of one million or more, the nominating petition of independent candidates for the office of Judge of Probate Court, Judge of the Court of Common Pleas, and such other courts as are established by statute, shall be signed by qualified electors not less in number than seven per cent of the number of electors who voted for Governor at the next preceding regular state election in the territory over which such court has jurisdiction, or twenty-five hundred electors, whichever is the lesser number.
“No such nominating petition shall be accepted for filing or filed if it appears on its face to contain signatures aggregating in number more than twice the minimum aggregate number of signatures required by *153 this section. Such petition shall he filed with the board of elections not later than four p. m. of the ninetieth day before the first Tuesday after the first Monday in May immediately preceding such general election.”
Section 26, Article II of the Constitution of Ohio, reads in part:
“All laws, of a general nature, shall have a uniform operation throughout the state * * *.”
It will be noted that Section 3513.256, Bevised Code, requires every independent candidate for Judge of the Probate Court or Judge of the Court of Common Pleas to file a nominating petition signed by not less than 25 qualified electors of his county or not less than seven per cent of the number of electors who voted for Governor at the next preceding regular state election in the county, which ever is the greater, but that in counties having a population of one million or more the nominating petitions of independent candidates for the office of Judge of the Probate Court or Judge of the Common Pleas Court shall be signed by qualified electors not less in number than seven per cent of the number of electors who voted for Governor at the next preceding regular state election in the territory over which such court has jurisdiction, or 2,500 electors, whichever is the lesser number.
Cuyahoga County is the only county in the state which has a population of one million or more, so that in each of 87 counties an independent candidate for judge must have on his nominating petition signatures equalling in number to seven per cent of the total number of electors who voted for Governor at the preceding election, with a minimum of 25, whereas in Cuyahoga County such a nominating petition is valid with only 2,500 signatures thereon. This year, for instance, although only 2,500 such signatures would be required in Cuyahoga County with a population of 1,389,532, in Hamilton County with 723,952 in popula *154 tion, 23,525 signatures would be required, in Franklin County with 503,410 in population, 15,943 signatures would be required, in Summit County with 410,032 in population, 12,925 signatures would be required, and in Lucas County with 395,551 in population, 12,919 signatures would be required.
One would have to go to counties of less than 100,000 in population to find a requirement for as small a number of signatures as is required in the most heavily populated county in the state.
It is conceded that Section 3513.256, Revised Code, is a law of a general nature. In fact, it would be difficult to argue otherwise.
Respondents contend that the population of Cuyahoga County has become so large that it would be impractical for an independent candidate to secure signatures upon his nominating petition equal in number to seven per cent of the last vote in the county for Governor; that this year, for instance, a minimum of 44,649 signatures would be required; and that, since it is in the public interest to encourage the independence of the judiciary, the General Assembly made it easy for independents to run in Cuyahoga County.
It is obvious that it would be exceedingly difficult to secure sufficient signatures to run as an independent for the judiciary in Cuyahoga County, but the same thing is true in Hamilton, Franklin, Summit and Lucas Counties, and all other industrial urban counties, whose interest in having an independent judiciary is just as great as in Ohio’s largest county-. Respondents contend, however, that the other counties have not complained, and that they are not injured by making it easy to run in Cuyahoga County while keeping it difficult to run in the other counties.
We do not believe that lack of such complaints or injuries constitutes a test for the uniform operation of laws of a general nature.
*155 Obviously the General Assembly made the percentage of required signatures high in order to make it more difficult for candidates without large and substantial support to run for judicial office, but if the percentage requires too great and impractical an effort to secure the required number of signatures for independent candidates in counties with large populations, the General Assembly has the power in requiring seven per cent to fix a maximum number less than seven per cent as to all counties where seven per cent would exceed such maximum number.
It is difficult to perceive why in a law requiring uniform operation throughout the state one county should be selected to have less than one-half of one per cent of the votes cast for Governor as the required number on nominating petitions, where all the remaining 87 counties must have at least seven per cent.
It is true that exact uniformity of operation is rarely possible, and statutes have been held constitutional in which there has been a classification of communities. In State, ex rel. Stanton, Pros. Atty., v. Powell, 109 Ohio St., 383, 142 N. E., 401, the statute creating the office of Chief Justice of the Court of Common Pleas in those counties having two or more common pleas judges was held not to conflict with the constitutional provision requiring uniformity of operation, even though the majority of the counties of the state each have only one common pleas judge. In such a county with one judge there could be no office of chief justice, and the statute, being applicable to all the counties with two or more judges, is constitutional for the reason that it operates uniformly upon every person included within its operative provisions, and such operative provisions are not arbitrary or unnecessarily restrictive. On the other hand, in Andrews v. State, ex rel. Henry, 104 Ohio St., 384, 135 N. E., 655, this court held unconstitutional an act of the General As *156 sembly providing for the appointment of a bonding commissioner by the Chief Justice or the Presiding Judge of the Court of Common Pleas in counties having 12 common pleas judges. At the time Cuyahoga County was the only county having 12 such judges. This court held that the act operative only as to Cuyahoga County was unconstitutional. In the opinion it is stated:
“What possible distinction can arise making the act applicable only to counties having twelve common pleas judges is absolutely unintelligible. The act as a whole upon its face bears every evidence of special legislation for one of the political subdivisions of the state known as a county, and exempting therefrom all the other eighty-seven political subdivisions that have to deal with identically the same subject matter varying only in degree.”
There can be no doubt that a statute may be enacted which, with a proper classification, can comply with the constitutional requirement of uniform operation.
In City of Xenia v. Schmidt, 101 Ohio St., 437, 130 N. E., 24, this court held:
“Classification is an inherent right and power in legislation, limited only by the Constitution and the judicial constructions thereunder.
‘ ‘ A classification must not be arbitrary, artificial, or evasive, but there must be a real and substantial distinction in the nature of the class or classes upon which the law operates.”
There are any number of ways by which what is claimed to be an evil in reference to Cuyahoga County might be overcome by legislative action. The problems in the present case are different only in degree in all the large urban industrial counties in the state, and to say that a law has uniform operation, which requires only 2,500 signatures to a nominating peti *157 tion in Cuyahoga County and nearly ten times that number in Hamilton County and many times that number in several of the other counties of the state .with the same problems and the same sort of population as Cuyahoga County, seems to us to be so fantastic as to approach absurdity.
in State, ex rel. English, v. Industrial Commission, 160 Ohio St., 443, 448, 449, 117 N. E. (2d), 22, Judge Lamneck stated the essential elements necessary to make a general law operate uniformly. They are:
“1. The law must operate equally upon the members of the class to be affected.
“2. It must embrace all persons who are or may be in like situations and circumstances.
"3. The designation of the class must be reasonable and not unjust or capricious.
“4. The designation must be based upon a real distinction. ”
In our opinion that part of Section 3513.256, Revised Code, which, in effect, provides that in Cuyahoga County the nominating petitions of independent, candidates for the offices of probate judge and common pleas judge need be.signed by only 2,500 electors, whereas in counties with similar populations, problems and conditions, the required number of signers must be many times that number, does not have any of the essential elements above set forth. The law does not operate equally upon the members of the class to be affected because it places a greater burden upon the electors of the other industrial and urban counties of Ohio than it does upon those of Cuyahoga County. It embraces only the electors of Cuyahoga County in its lenient provisions and excludes the electors of the other industrial and urban counties from such provisions. It is not a reasonable designation of the electors of one county for special treatment- as distinguished from those of *158 the other counties, but on the other hand it is an unjust and capricious, classification. Furthermore, the classification is not based upon a real distinction.
We hold, therefore, that that portion-of Section 3513.256, Revised Code, referring to counties with a population of one million or more, which includes only Cuyahoga County, is in conflict with Section 26, Article II of the Ohio Constitution, inasmuch as it is a law of a general nature which does not have uniform operation throughout the state. Therefore, the independent candidates for judicial office in Cuyahoga County, who have filed nominating petitions containing only the number of signatures required by such portion of the statute and not containing seven per cent of the number of electors who voted for Governor at the last preceding regular state election in the county, are not entitled to have their names printed on the ballot to be used at the general election on November 2, 1954.
The demurrers to relator’s petition are overruled, and the writ of prohibition prayed for is allowed.

Demurrers overruled and writ allowed.

Wéygandt, C. J., Middleton, Taet, Hart, Zimmerman and Lamneck, JJ., concur.